# EXHIBIT 2

| | |
|---|---|
| **From:** | Manes, Austin |
| **Sent:** | Thursday, January 3, 2019 3:45 PM |
| **To:** | Andrew Perito; Andre, Paul; Kobialka, Lisa; Hannah, James; Kastens, Kris |
| **Cc:** | Sonal Mehta; Joseph Gratz; Josh Furman |
| **Subject:** | RE: Finjan v. Zscaler -- email search requests |

Andrew:

We disagree.  Please provide a time that your lead counsel is available to meet and confer.  This is a demand under paragraph 12 of Judge Westmore's standing order.

Austin

**Austin Manes**
Associate

Kramer Levin Naftalis & Frankel LLP
990 Marsh Road, Menlo Park, California 94025
**T** 650.752.1718

This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.

---

**From:** Andrew Perito <APerito@durietangri.com>
**Sent:** Monday, December 24, 2018 1:44 PM
**To:** Manes, Austin <AManes@KRAMERLEVIN.com>; Andre, Paul <PAndre@KRAMERLEVIN.com>; Kobialka, Lisa <LKobialka@KRAMERLEVIN.com>; Hannah, James <JHannah@KRAMERLEVIN.com>; Kastens, Kris <KKastens@KRAMERLEVIN.com>
**Cc:** Sonal Mehta <SMehta@durietangri.com>; Joseph Gratz <JGratz@durietangri.com>; Josh Furman <jfurman@durietangri.com>; SERVICE-ZSCALER-FJ <SERVICE-ZSCALER-FJ@durietangri.com>
**Subject:** [EXTERNAL] RE: Finjan v. Zscaler -- email search requests

Austin,

As to Mr. Warner's email, the distinction you attempt to draw between *Richmark* and the present case is irrelevant.  In *Richmark*, the American corporation, TFC, won a default judgment "against Beijing Ever Bright Industrial Co. (Beijing), a corporation organized under the laws of the People's Republic of China (PRC) and an arm of the PRC government."  *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1471 (9th Cir. 1992).  TFC sought discovery of Beijing's worldwide assets, Beijing objected on certain grounds, and the district court ordered the production of documents and imposed sanctions.  Though Beijing raised this issue of state secrecy law late in the process, the Ninth Circuit "explicitly accepted Beijing's contention that the PRC's State Secrets Act barred disclosure of the information in question" and thus proceeded to balance "[t]he PRC's admitted interest in secrecy . . . against the interests of the United States and the plaintiffs in obtaining the information."  *Id.* at 1474.  Nothing in that opinion suggests that the

1

classification of state secrets by China should be treated differently than the requirements European privacy law on European custodians—both are subject to the balancing test which pits foreign law against domestic interest.

Citing Supreme Court law, the Ninth Circuit articulated the factors in that balancing test, one of which is the "Importance of the Documents." As the Ninth Circuit explicitly recognized, "[w]here the outcome of litigation 'does not stand or fall on the present discovery order,] or where the evidence sought is cumulative of existing evidence, courts have generally been unwilling to override foreign secrecy laws." *Id.* at 1475 (quoting *In re Westinghouse Elec. Corp. Uranium Contracts Litigation*, 563 F.2d 992, 999 (10th Cir. 1977) (reviewing a sanctions order based on the failure to disclose information even though it would violate Canadian law)). Another factor considered by the Ninth Circuit is whether there are "Alternate Means of Obtaining Information." Of course, "[i]f the information sought can easily be obtained elsewhere, there is little or no reason to require a party to violate foreign law." *Id.* The "most important factor" considered was the "Balance of National Interests." *Id.* at 1476. Here, European interest in privacy outweighs Finjan's document request. This is especially true when, as here, the extent of your analysis is to conclusorily state that Mr. Warner's e-mails are "highly relevant and proportional." Relevant to what? Proportional how? Do you have any caselaw that justifies ignoring or overriding the privacy interests at stake here in the context of discovery governed by GDPR, much less doing so in advance of seeking email discovery from all but one US custodian. Please articulate the basis for your assertions and any law on which you purport to rely so that the parties can have a constructive meet and confer on these issues.

Similarly with respect to Mr. Sinha, you insist that your lightly modified search terms are "appropriately tailored and result in a number manageable for this case," but you do not provide any explanation why you contend that is so. For example, you narrowed the initial term "drop!" to "dropp!" which in light of Finjan's apparent infringement theory appears to target documents concerning "dropped files" that are downloaded by potentially hostile downloadables. As such, emails from Mr. Sinha concerning such topics as "dropped connections," "dropping packets," "dropped calls," "dropping ratings," "dropped features," or "dropping in value" would not be relevant and yet would be included in the results of a search that is overbroad to its intended basis for potential relevance. By contrast, the alternative search string we proposed ("dropped file" OR "dropped files" OR "dropping files") would not hit on any of those irrelevant strings and would cover the natural variants of the potentially relevant phrase that your proposed search terms "drop!" and "dropp!" appear to have been intended to identify. Please explain why you believe our alternative search strings are insufficient to identify the types of emails that you seek, and on what basis you contend that is so. As to your request for "de-duplicated hit counts," I believe by that you mean the number of documents returned by your proposed search terms when combined with disjunctive ORs. That total—all for just a single custodian—is 67,813 documents and family members comprising over 820,000 pages of documents.

Regards and happy holidays,
Andrew

Andrew L. Perito | Durie Tangri LLP | aperito@durietangri.com | (415) 362-6666


**From:** Manes, Austin <AManes@KRAMERLEVIN.com>
**Sent:** Wednesday, December 19, 2018 1:17 PM
**To:** Andrew Perito <APerito@durietangri.com>; Andre, Paul <PAndre@KRAMERLEVIN.com>; Kobialka, Lisa <LKobialka@KRAMERLEVIN.com>; Hannah, James <JHannah@KRAMERLEVIN.com>; Kastens, Kris <KKastens@KRAMERLEVIN.com>
**Cc:** Sonal Mehta <SMehta@durietangri.com>; Joseph Gratz <JGratz@durietangri.com>; Josh Furman <jfurman@durietangri.com>
**Subject:** RE: Finjan v. Zscaler -- email search requests

Andrew:

Mr. Warner's emails are highly relevant and proportional.  Also, the caselaw you cited involved discovery from a branch of the Chinese government and laws governing "classified state secrets" (which is not the case here), and even then the Ninth Circuit affirmed sanctions for failure to produce.  *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1471-72 (9th Cir. 1992).  You've had more than two months to produce Mr. Warner's emails.  Produce them immediately or provide a time that lead counsel is available to meet and confer so we can move the Court.

Regarding Mr. Sinha, I am concerned that you are not running search terms properly.  The term "Finjan" did not change between searches, yet you're now reporting 71 fewer emails in your second search.  Please explain how you lost 71 emails while searching a second time for the exact same term.

Our amended search terms for Mr. Sinha are appropriately tailored and result in a manageable number for this case.  Please produce them immediately or provide the true hit counts after de-duplication so that we can consider whether any terms need further amendment.  We do not agree to your counter proposals.  If you are unwilling to produce Mr. Sinha's emails under Finjan's search terms, or provide de-duplicated hit counts, then we would also like to meet and confer on this issue.

Thanks,
Austin

**Austin Manes**
Associate

Kramer Levin Naftalis & Frankel LLP
990 Marsh Road, Menlo Park, California 94025
**T** 650.752.1718

This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.

---

**From:** Andrew Perito <APerito@durietangri.com>
**Sent:** Tuesday, December 18, 2018 7:09 PM
**To:** Manes, Austin <AManes@KRAMERLEVIN.com>; Andre, Paul <PAndre@KRAMERLEVIN.com>; Kobialka, Lisa <LKobialka@KRAMERLEVIN.com>; Hannah, James <JHannah@KRAMERLEVIN.com>; Kastens, Kris <KKastens@KRAMERLEVIN.com>
**Cc:** Sonal Mehta <SMehta@durietangri.com>; Joseph Gratz <JGratz@durietangri.com>; Josh Furman <jfurman@durietangri.com>; SERVICE-ZSCALER-FJ <SERVICE-ZSCALER-FJ@durietangri.com>
**Subject:** [EXTERNAL] RE: Finjan v. Zscaler -- email search requests

Austin,

Your proposed revised terms for Mr. Sinha remain overbroad, both as to their scope generally and in light of the document counts, which number in the many tens of thousands even without the expander for the disjunctive "db" term.  We have proposed alternative search strings for Mr. Sinha's emails that provide appropriate tailoring in light of the claims, accused technology, and the parties' apparent disputes, avoiding terms directed to a company, product or service generically. These terms collectively hit on over three thousand documents and family members, totaling approximately 65k pages, for this single custodian. Please let us know if we can proceed with the strings as we have proposed below or if you have further proposals.

- Term: sandbox* AND (Joe OR Report OR BA OR JSB OR ESX* OR samba OR dynamic)
  - Count: 9,784
  - Counter-proposal:  ((sandbox! AND (Joe OR JSB OR ESX! OR BA samba OR "dynamic analysis" "dynamic behavioral analysis") /5 (send! transmit! execut! run!))) = 1083

- Term: behav* AND (analy* OR sandbox* OR dynamic OR BA)
  - Count: 20,149
  - Counter-proposal: ((behav! /5 (analy! OR sandbox! OR "dynamic analysis" OR "dynamic behavioral analysis" OR BA) /5 (send! OR transmit! OR execut! OR run!))) = 674

- Term: dropp*
  - Count: 13,555
  - Counter-proposal: ("dropped file" OR "dropped files" OR "dropping files") = 931

- Term: ((database OR db) AND (Threat OR ZURL OR Authority OR Engine OR results OR volume OR log! OR "SBR" OR manag! OR "AV"))
  - Count: 32,403
  - (((database OR db) /2 (manag! OR rule!)) AND (Threat OR ZURL OR  "SBR" OR "AV" OR "Reporting Engine" OR "Database Engine" OR "Central Authority" OR "sandbox log" OR nanolog OR "nano log" OR "contents volume" OR "events volume" OR "results volume" OR "SBResults volume" OR "results report" OR "analysis report" OR "2-tier report")) = 610

- Term: Finjan
  - Count = 410
  - Counter-proposal: ((finjan & patent!) OR ("6,804,780" OR "7,647,633" OR "7,975,305" OR "8,677,494" OR "6804780" OR "7647633" OR "7975305" OR "8677494" OR (patent! /2 (780 OR 633 OR 305 OR 494)))) = 236

As to your request for Mr. Warner's emails and GDPR, GDPR regulation only came into effect on May 25, 2018, so the period within which discovery has been conducted under its provisions is quite recent.  GDPR mandates a complicated scheme of protections for processing and transfer of "personal data," which is defined very broadly under Article 4.  Moreover, the impending possibility of Brexit has created additional uncertainty regarding the treatment of data from the UK, including with regard to the applicability of the existing EU-US Privacy Shield.  We do not believe that Mr. Warner (or other EU custodians) have information that is uniquely relevant to this action as compared to US custodians, from whom email discovery does not present the same GDPR complexity and burden.  However, in order to reach an agreed resolution of Finjan's email search request, we would be willing to discuss the possibility of conducting a limited search for and production of emails from Mr. Warner that hit on terms directed to Finjan's patents, e.g., the patent numbers or variations thereof or references to "Finjan patent[s]," created before the filing date of the lawsuit, subject to the additional processing and production requirements that are necessary to anonymize responsive emails and remove personal data subject to GDPR.  Given both the unique burden associated with processing documents that contain personal data from EU custodians and the likelihood that any documents would be cumulative or only tangentially relevant to the litigation, a request for this information at this stage is not proportional to the needs of the case -- this search and production would occur after the production of documents from non-EU custodians.

Following the completion of the production from domestic custodians, if Finjan continues to believe that Mr. Warner's custodial documents are relevant and non-duplicative, the parties can negotiate appropriate measures for such production.  This would include, at a minimum, an amendment to the Protective Order in this case to ensure compliance with GDPR requirements (including the permanent redaction of any personal data contained in those documents).  This is consistent with the Ninth Circuit's recognition that, "[w]here the outcome of litigation 'does not stand or fall on the present discovery order,' or where the evidence sought is cumulative of existing evidence, courts have generally been unwilling to override foreign secrecy laws."  *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992) (quoting *In re Westinghouse Elec. Corp. Uranium Contracts Litig.*, 563 F.2d 992, 999 (10th Cir. 1977)).

Regards,
Andrew

Andrew L. Perito | Durie Tangri LLP | aperito@durietangri.com | (415) 362-6666

---

**From:** Manes, Austin <AManes@KRAMERLEVIN.com>
**Sent:** Friday, December 14, 2018 1:03 PM
**To:** Andrew Perito <APerito@durietangri.com>; Andre, Paul <PAndre@KRAMERLEVIN.com>; Kobialka, Lisa <LKobialka@KRAMERLEVIN.com>; Hannah, James <JHannah@KRAMERLEVIN.com>; Kastens, Kris <KKastens@KRAMERLEVIN.com>
**Cc:** Sonal Mehta <SMehta@durietangri.com>; Joseph Gratz <JGratz@durietangri.com>; Josh Furman <jfurman@durietangri.com>
**Subject:** RE: Finjan v. Zscaler -- email search requests

Andrew,

Please produce emails and hit counts for Mr. Sinha for the amended search terms below (the term "Finjan" did not change).

finjan
sandbox* AND (Joe OR Report OR BA OR JSB OR ESX* OR samba OR dynamic)
behav* AND (analy* OR sandbox* OR dynamic OR BA)
dropp*
(database OR *db) AND (Threat OR ZURL OR Authority OR Engine OR results OR volume OR log* OR SBR OR manag* OR AV)

Also, it has been 2 months since we requested Mr. Warner's emails.  Please produce those immediately.

Thanks,
Austin

**Austin Manes**
Associate

Kramer Levin Naftalis & Frankel LLP
990 Marsh Road, Menlo Park, California 94025
**T** 650.752.1718

This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.

---

**From:** Andrew Perito <APerito@durietangri.com>
**Sent:** Thursday, November 29, 2018 7:16 PM
**To:** Manes, Austin <AManes@KRAMERLEVIN.com>; Andre, Paul <PAndre@KRAMERLEVIN.com>; Kobialka, Lisa <LKobialka@KRAMERLEVIN.com>; Hannah, James <JHannah@KRAMERLEVIN.com>; Kastens, Kris <KKastens@KRAMERLEVIN.com>

**Cc:** Sonal Mehta <SMehta@durietangri.com>; Joseph Gratz <JGratz@durietangri.com>; Josh Furman <jfurman@durietangri.com>
**Subject:** [EXTERNAL] RE: Finjan v. Zscaler -- email search requests

Hi Austin,

Below are individually calculated hit counts for Finjan's initially proposed terms for Mr. Sinha's emails (noting that the disjunctively combined "db" term was run without the proposed expander, which caused a timeout on the search). We note that the concern is not simply with the total hit count, but also with the indiscriminate nature of the terms, which are not appropriately targeted to "specific issues, rather than general discovery of a product or business" as required by the ESI order.

Term/Count

finjan - 481
sandbox* - 32,236
behav* - 56,186
drop* - 55,911
database - 45,845
db - 51,369

Regards,
Andrew

Andrew L. Perito | Durie Tangri LLP | aperito@durietangri.com | (415) 362-6666

---

**From:** Manes, Austin <AManes@KRAMERLEVIN.com>
**Sent:** Tuesday, November 27, 2018 12:44 PM
**To:** Andrew Perito <APerito@durietangri.com>; Andre, Paul <PAndre@KRAMERLEVIN.com>; Kobialka, Lisa <LKobialka@KRAMERLEVIN.com>; Hannah, James <JHannah@KRAMERLEVIN.com>; Kastens, Kris <KKastens@KRAMERLEVIN.com>
**Cc:** Sonal Mehta <SMehta@durietangri.com>; Joseph Gratz <JGratz@durietangri.com>; Josh Furman <jfurman@durietangri.com>
**Subject:** RE: Finjan v. Zscaler -- email search requests

Andrew,

We are not inclined to replace Mr. Warner as a custodian. Please explain specifically what burden the GDPR presents and why you think that burden is not proportional to the needs of this case. Emails from European custodians are routinely produced in this District without issue. Please also provide a date certain when you will produce Mr. Warner's emails.

If you think the search terms for Mr. Sinha are overbroad, then provide hit counts so we can consider narrowing them. Based on your email, you already know how many documents were hit so please provide the hit counts immediately.

Austin

## Austin Manes
Associate

Kramer Levin Naftalis & Frankel LLP
990 Marsh Road, Menlo Park, California 94025
**T** 650.752.1718
amanes@kramerlevin.com

Bio

This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.

---

**From:** Andrew Perito <APerito@durietangri.com>
**Sent:** Tuesday, November 27, 2018 11:56 AM
**To:** Manes, Austin <AManes@KRAMERLEVIN.com>; Andre, Paul <PAndre@KRAMERLEVIN.com>; Kobialka, Lisa <LKobialka@KRAMERLEVIN.com>; Hannah, James <JHannah@KRAMERLEVIN.com>; Kastens, Kris <KKastens@KRAMERLEVIN.com>
**Cc:** SERVICE-ZSCALER-FJ <SERVICE-ZSCALER-FJ@durietangri.com>
**Subject:** [EXTERNAL] Finjan v. Zscaler -- email search requests

Dear Counsel,

I am available to meet and confer regarding Finjan's email requests this afternoon between 3pm and 5pm or tomorrow between 1:30-4:30 pm.  Please let us know if there is a time in those windows or later this week that would work for you.  Zscaler has collected email from the first two email custodians requested by Finjan, Amit Sinha and Tim Warner.  As you may know, Mr. Warner is a UK employee of Zscaler who has only worked at the company since late 2014.  Because of this, Finjan's request for email from Mr. Warner necessarily involves EU custodian personal data, as governed by the EU General Data Protection Regulation (GDPR). Review and production of such data thus implicates the unusually burdensome requirements of the GDPR for protection of such data.  We would like to discuss with you whether an alternative US custodian can be identified that does not present these burdens that are disproportionate to the needs of the litigation. Additionally, Finjan's proposed search terms fail to comply with the requirements of the ESI order, including that those terms each be "narrowly tailored to particular issues." Not only are the terms indiscriminate, they are so broad that they hit on a huge number of documents—for Mr. Sinha, well over 100,000 documents and their families. The *db term in the final search alone was such that it caused the system to time out (in addition to being an impermissible disjunctive combination under the ESI order). We look forward to discussing with you a way to address these issues.

Regards,
Andrew

Andrew L. Perito | Durie Tangri LLP | aperito@durietangri.com | (415) 362-6666