UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC., <br>              Plaintiff, <br> v. <br> ZSCALER, INC., <br>              Defendant. | Case No. 17-cv-06946-JST (KAW) <br><br> **ORDER REGARDING JOINT DISCOVERY LETTER** <br> Re: Dkt. No. 101 |

Plaintiff Finjan, Inc. filed the instant suit against Defendant Zscaler, Inc., alleging patent infringement. (Compl., Dkt. No. 1.) On January 23, 2019, the parties filed a joint discovery letter regarding the production of the e-mails of Mr. Tim Warner, a United Kingdom citizen. (Discovery Letter, Dkt. No. 101.) Having reviewed the letter, the Court GRANTS the relief sought by Plaintiff.

## I. BACKGROUND

Plaintiff owns patents involving computer security. (Compl. ¶¶ 7-8.) One of its patented products was a Secure Web Gateway ("SWG"). (Discovery Letter at 1.) In 2009, Plaintiff sold its business and a license to sell its products to M86, but kept the rights to the intellectual property. (*Id.*) In 2012, Trustwave acquired M86 and the rights to sell Plaintiff's former products.

In October 2018, Plaintiff sought the production of e-mails from Mr. Warner. Mr. Warner previously directed Plaintiff's U.K. sales from 2002 to 2010. (Discovery Letter at 1.) During the transition to M86, Mr. Warner directed the sales of Plaintiff's products for M86 from 2010 to 2012. (*Id.*) When M86 was acquired by Trustwave, Mr. Warner continued to sell Plaintiff's SWG for Trustwave in Europe, the Middle East, and Africa. (*Id.*) In 2014, Mr. Warner left Trustwave and began working for Defendant, and is now Defendant's director of all sales to any business or

1 government entity in the U.K. (*Id.*) Plaintiff asserts that Mr. Warner has "intimate knowledge" of Plaintiff's patented technology, and was familiar with all of the SWG's technical aspects and "could explain them inside out." (*Id.*)

## II. DISCUSSION

Defendant asserts that it cannot produce Mr. Warner's e-mails without violating European privacy requirements contained in the General Data Protection Regulation ("GDPR"), which became effective in May 2018. (Discovery Letter at 3.) Defendant states that the GDPR limits "discovery of personal data to that which is objectively relevant to the issues being litigated." (*Id.* at 4.) Defendant argues that Plaintiff's overbroad search terms would require the production of unnecessary personal data, and that such data would need to be anonymized or redacted. (*Id.*) Defendant further contends that the anonymization cost may be great, and therefore Plaintiff should split the cost. (*Id.*) Defendant thus proposes that the discovery be staged so that it not produce Mr. Warner's e-mails until after production from domestic custodians, amend the Protective order to address permanent redactions, and require splitting the costs of anonymization. (*Id.*) Plaintiff responds that anonymization would impede its review of the e-mails, and that Defendant could have produced the e-mails as "Attorney's Eyes Only" to satisfy the GDPR. (*Id.* at 1-2.)

In general, a foreign country's statute precluding disclosure of evidence "do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 n.29 (1987). In determining whether the foreign statute excuses noncompliance with the discovery order, courts consider: (1) the importance of the documents or other information requested to the litigation; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance would undermine important interests of the United States. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992). These factors are not exclusive; the courts also consider "the extent and the nature of the hardship that inconsistent enforcement

would impose upon the person," as well as "the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by the state." *Id.* (internal quotation omitted).

First, the Court considers the importance of the documents at issue. "Where the evidence is directly relevant, [the Ninth Circuit has] found this factor to weigh in favor of disclosure." *Richmark*, 959 F.2d at 1468. Courts, however, "have refused to require production where the documents sought are largely cumulative of records already produced." *United States v. Vetco, Inc.*, 691 F.2d 1281, 1290 (9th Cir. 1981). Plaintiff contends that Mr. Warner's e-mails may prove the fact and timing of Defendant's infringement, which would also go to willfulness. (Discovery Letter at 1.) Defendant responds that the e-mails could be duplicative of production from domestic custodians. (*Id.* at 4.) The Court finds that Mr. Warner's e-mails are directly relevant to the infringement issue, particularly given his overlapping roles at Plaintiff, Defendant, M86, and Trustwave, and his personal knowledge of the technical aspects of the patented technology. Furthermore, Defendant's argument of duplication is hypothetical, as Defendant admits that they have not done a search of Mr. Warner's e-mails. (*See id.* at 5 (stating that the search terms could "return[] *potentially* thousands of documents") (emphasis added).) Thus, the Court finds that Defendant "ha[s] made no showing that the documents are cumulative of records already produced." *Vetco*, 691 F.2d at 1290. This factor weighs in favor of disclosure.

Second, the Court reviews the specificity of the request. Defendant challenges the specificity of the request, arguing that Plaintiff's five proposed search terms -- "Finjan," "zero*day or zeroday or 0*day," "malicious," "obfuscat*," and sandbox* -- are "overbroad." (Def.'s St. at 4.) Specifically, Defendant contends that the search terms should be limited to "Finjan" and the asserted patent numbers, rather than the technical terms requested by Plaintiff. (*Id.* at 5.) The Court disagrees. Rather than requesting all of Mr. Warner's e-mails, Plaintiff has limited its request to itself and terms related to the patents at issue. (*See* Compl. ¶¶ 12, 15 (describing '633 and '494 Patents as concerning "Malicious Mobile Code Runtime Monitoring System and Methods"), 31 (explaining that Defendant's allegedly infringing Cloud Sandbox technology is designed to prevent zero-day exploits).) Limiting the e-mail search to those that identify the

3

patents by number, as Defendant proposes, would eliminate e-mails discussing the patents that do not refer to the patents by number, even if those e-mails discuss the content of the patents or refer to the patent by name. The Court finds that this factor weighs in favor of disclosure.

Third, the Court considers where the information is located, or the location of information and parties. Here, although Mr. Warner is located in the U.K., Defendant itself is an American company, subject to American discovery law. (Discovery Letter at 2.) This factor weighs somewhat in favor of disclosure. *See Vetco*, 691 F.2d at 1290 (finding that this factor did not alter the conclusion that the discovery be allowed because the discovery would take place both in America and Switzerland, as the records would be shipped out of Switzerland and the production to the requesting party would take place in America); *contrast with Richmark Corp.*, 959 F.2d at 1475 (finding this factor did not weigh in favor of discovery where the responding party had no American office).

Fourth, the Court considers the availability of alternative means of obtaining the information. "If the information sought can easily be obtained elsewhere, there is little or no reason to require a party to violate foreign law." *Richmark Corp.*, 959 F.2d at 1475. "[T]he alternative means must be 'substantially equivalent' to the requested discovery." *Id.* Defendant contends that the information could be produced by domestic custodians. (Discovery Letter at 4.) As discussed above, however, Defendant does not substantiate this claim as it has not done a search of Mr. Warner's e-mails -- nor is it clear that Defendant has finished its production by domestic custodians -- so it is not clear the domestic custodians would have the same information. Alternatively, Defendant proposes redacting all personal information, but this would not be a substantially equivalent alternative when the third parties are relevant to determining who Mr. Warner communicated with about the issues in this case. (*See id.* at 3, 4; *Vetco*, 691 F.2d at 1290 ("Masking the names of third parties is not a substantially equivalent alternative since the identities of the third party is relevant . . . . ").) This factor favors disclosure.

Fifth, the Court considers the balance of national interests. "This is the most important factor," and requires that the Court "assess the interests of each nation in requiring or prohibiting disclosure, and determine whether disclosure would affect important substantive policies or

4

interests . . . ." *Richmark Corp.*, 959 F.2d at 1476. Courts have found that there is a strong American interest in protecting American patents. *See Work v. Bier*, 106 F.R.D. 45, 55 (D.D.C. 1985) ("the litigation here implicates United States interests of a constitutional magnitude in connection with its administration of its patent laws under U.S. Const. Art. 1, § 8, cl. 8"); *Dyson, Inc. v. SharkNinja Operating LLC*, No. 1:14-cv-779, 2016 WL 5720702, at *3 (N.D. Ill. Sept. 30, 2016) ("non-compliance with the discovery request would undermine the United States' interests in ensuring that patent suits are fully and fairly litigated"). While the U.K. has an interest in protecting the privacy of its citizens, courts have also recognized that an interest in protecting privacy "is diminished where the court has entered a protective order preventing disclosure of the secret information." *Masimo Corp. v. Mindray DS USA, Inc.*, Case No.: SACV 12-02206-CJC(JPRx), 2014 WL 12589321, at *3 (C.D. Cal. May 28, 2014); *see also Vetco*, 691 F.2d at 1289 (finding that Switzerland's interest in protecting privacy was "diminished where the party seeking the records is the IRS, which is required by law to keep the information confidential"). Here, there is a protective order, and Plaintiff has agreed to allow Defendant to mark the e-mails as highly confidential. (*See* Discovery Letter at 2-3.) Additionally, it is not clear to what extent the U.K.'s interest in privacy is implicated, as Defendant states that the GDPR permits "the discovery of personal data to that which is objectively relevant to the issues being litigated." (Discovery Letter at 4 (internal quotation omitted).) Given Mr. Warner's role and the limited search terms, disclosure of the e-mails that are directly relevant to the instant case would appear to not violate the GDPR. Thus, considering the significant American interest in protecting its patents and the reduced U.K. interest in protecting the privacy of its citizens, the Court concludes that this factor weighs heavily in favor of disclosure.

In addition to the five factors, the Court also finds that the burden on Defendant does not weigh against disclosure. "The party relying on foreign law has the burden of showing that such law bars production." *Vetco*, 691 F.2d at 1289. As discussed above, it is not clear that Defendant would be barred from producing Mr. Warner's e-mails under the GDPR, given that e-mails that are relevant can be produced, and Defendant has apparently not yet done a search of Mr. Warner's e-mails. Further, other courts have found that the burden of showing that the law bars production is

5

not satisfied where there is no evidence of the extent to which the government enforces its laws. *See Masimo Corp.*, 2014 WL 12589321, at *3; *In re Air Crash at Taipei, Taiwan on Oct. 31, 2000*, 211 F.R.D. 374, 380 (C.D. Cal. 2002) (finding that hardship was not a factor weighing against disclosure where the producing party presented no "evidence regarding the manner and extent to which Singapore enforces its secrecy laws"). Here, Defendant provides no information on the likelihood of enforcement.

Taken together, the Court concludes that the GDPR does not preclude the Court from ordering Defendant to produce the requested e-mails in an unredacted form, subject to the existing protective order.

### III. CONCLUSION

For the reasons stated above, the Court ORDERS Defendant to produce Mr. Warner's e-mails.

IT IS SO ORDERED.

Dated: February 14, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge